UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

JOHN HORANZY, individually and on
behalf of all others similarly situated,

               Plaintiff,

  -v-                                       7:14-CV-1296

VEMMA NUTRITION COMPANY,
BENSON K. BOREYKO, and
YIBING WANG,

               Defendants.

--------------------------------

APPEARANCES:                                  OF COUNSEL:

BURSOR & FISHER, P.A.                   YITZCHAK KOPEL, ESQ.
Attorneys for Plaintiff
888 Seventh Avenue
New York, NY 10019

BURSOR & FISHER, P.A. - CA Office      YEREMEY O. KRIVOSHEY, ESQ.
Attorneys for Plaintiff
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596

BOND, SCHOENECK LAW FIRM         EDWARD R. CONAN, ESQ.
Attorneys for Defendants                   LUCY S. CLIPPINGER, ESQ.
One Lincoln Center
Syracuse, NY 13202

COPPERSMITH BROCKELMAN PLC      KEITH BEAUCHAMP, ESQ.
Attorneys for Defendants                   KENT BROCKELMAN, ESQ.
2800 North Central Avenue, Suite 1200    SHELLEY TOLMAN, ESQ.
Phoenix, AZ 85004


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Named plaintiff John Horanzy ("Horanzy" or "plaintiff") filed this putative class action against defendants Vemma Nutrition Company ("Vemma"); its President and Chief Executive Officer, Benson K. Boreyko ("Boreyko"); and its "Chief Science Officer," Yibing Wang ("Wang").

Horanzy alleges that Vemma, Boreyko, and Wang (collectively "defendants") are responsible for marketing, advertising, and selling a line of liquid dietary supplements based on false and misleading health claims in violation of the federal Magnuson-Moss Warranty Act. Plaintiff also brings related claims under provisions of New York's General Business Law as well as common law claims for unjust enrichment, negligent and fraudulent misrepresentation, and breach of express warranty.

Defendants have moved to transfer venue to the District of Arizona pursuant to 28 U.S.C. § 1404(a). The motion has been fully briefed.[1] Oral argument was heard in Utica, New York on February 13, 2015. Decision was reserved.

## II. BACKGROUND

Vemma, an Arizona corporation headquartered in Tempe, Arizona, markets and sells a line of liquid dietary supplements containing a "clinically studied" and "doctor formulated" blend of ingredients based on a Southeast Asian fruit called "mangosteen." Compl. ¶¶ 1-2, 12. Defendants' product packaging and labeling, as well as its marketing and advertising

---

[1] Initially, defendants also moved to dismiss on the basis of a forum selection clause. They withdrew this argument in their reply brief after Horanzy raised a dispute about whether the clause applied to him. The consequences of this motion practice are discussed in greater detail below.

campaign, claims that these mangosteen-infused products provide a number of specific health benefits, including increasing a consumer's immune response and improving overall health. Id. ¶ 2. Plaintiff alleges that the "consensus of published research" confirms that these health claims are clearly false. Id.

Vemma's product line is manufactured in Arizona, California, Missouri, and Tennessee; its products are tested in Arizona, Illinois, Massachusetts, Michigan, and Wisconsin. Tengan Decl., ECF No. 17-1, ¶ 12. Vemma has no offices, property, or other presence in New York. Id. ¶ 14. In fact, Vemma does not even sell its products through traditional retail outlets in any of these states. Compl. ¶ 12.

Rather, Vemma employs a "direct sales" distribution model—it offers products through its website to "Vemma Members," who must first agree to the terms of a Member Agreement found on the corporation's website or by physically completing a written application.[2] Tengan Decl. ¶¶ 3, 5. Once enrolled, Vemma Members can order the product for consumption and/or receive commissions by re-selling the products and referring new members for enrollment. Compl. ¶¶ 79, 83.

Horanzy alleges that this "direct sales" or "multi-level marketing" sales structure is an integral part of the success of Vemma's fraudulent enterprise. Compl. ¶ 79. Plaintiff alleges that Boreyko, Vemma's CEO, previously engaged in the same sort of deceptive marketing and sales as head of a corporation called New Vision International, which was barred from selling a group of similarly products by the Federal Trade Commission ("FTC") in 1999. Id. ¶¶ 73, 77. Plaintiff alleges that when the FTC enjoined New Vision International

---

[2] This Member Agreement contains a forum-selection clause. However, Horanzy claims he is not a Vemma Member (and therefore not subject to the Agreement's clause).

from engaging in these fraudulent business practices, Boreyko merged that corporation with Vemma as a way to continue operations. Id. ¶¶ 77-78. Plaintiff claims that defendants employ the so-called "independent" member-distributor model in an attempt to insulate themselves from liability created by the "ridiculous" health claims they make. Id. ¶ 79. To that end, plaintiff alleges defendants provide manuals and other materials to these Vemma Members that instructs them to use false and misleading health claims and testimonials in "enrolling" new members and re-selling the product. Id. ¶ 3.

Horanzy is a resident of Colton, New York. Compl. ¶ 11. Plaintiff alleges that he made several individual, in-person purchases of Vemma products from a "Vemma Member" living in New York State. Id. Plaintiff alleges that the products he purchased and consumed did not result in the health benefits that Vemma claimed. Id. Finally, plaintiff alleges that he is not a "Vemma Member" since he never enrolled in the program, did not make any purchases from the website, and did not agree to the Member Agreement online or in writing. Id.

Horanzy seeks to represent a class of plaintiffs defined as "all persons in the United States who purchased one or more of the Products." Compl. ¶ 123. He further seeks to represent a subclass of plaintiffs defined as "all [c]lass members who are New York residents or who purchased the Products within the State of New York." Id. ¶ 124.

## III. DISCUSSION

### A. Consideration of Defendants' Reply

Shortly before oral argument in this matter, Horanzy's counsel submitted a letter brief raising two, related issues. See ECF No. 28. First, counsel formally objected to defendants' reply memorandum since, as a general matter, this District's local rules prohibit reply

submissions on non-dispositive motions. N.D.N.Y.L.R. ("Local Rule") 7.1(b)(2). Second, counsel points out that defendants' reply, which purports to "withdraw" their motion to dismiss, was submitted a mere <u>eleven</u> days prior to the scheduled return date even though these same Local Rules require a party "who does not intend to pursue" a motion to notify the Court and other parties no less than <u>fourteen</u> days before the scheduled return date. Local Rule 7.1(b)(3) (emphases added).

Of course, there can be no dispute that certain aspects of defendants' original motion, specifically the portion seeking dismissal of Horanzy's complaint pursuant to the doctrine of forum non conveniens, would have been dispositive if granted. And certainly plaintiff's counsel would not dispute that the Local Rules permit reply submissions on dispositive motions. <u>See</u> Local Rule 7.1(b)(1). The primary basis for plaintiff's objection on this point, then, is that defendants' "withdrawal" of their forum non conveniens argument—accomplished by providing notice in a reply memorandum submitted in accordance with the Local Rules regulating dispositive motion practice—rendered the reply submission itself impermissible.

Here, and as made clear at oral argument, defendants' reply memorandum will be considered. Notwithstanding the compulsory language recited above, it is well settled that a "district court has broad discretion to determine whether to overlook a party's failure to comply with local rules." <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 108 n.2 (2d Cir. 2006) (quoting <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001)). Assuming Horanzy's rather convoluted claim regarding the timing of defendants' reply submissions is meritorious, the favorable exercise of such discretion is appropriate here. Defendants' moving papers put plaintiff on notice that they sought to dismiss or, alternatively, transfer

venue. Indeed, plaintiff's opposition memorandum includes a detailed analysis of the appropriate venue transfer analysis.

The substance of defendants' reply memorandum—which is largely a further argument on the factors relevant to venue transfer already discussed in its initial papers—should be no surprise to Horanzy and, since he received an opportunity to substantively respond to that argument, cannot result in prejudice. However, defendants also submitted a reply declaration identifying additional details about various potential witnesses in this matter. See generally Tengan Reply Decl., ECF No. 26-1. Presumably, this was an attempt to cure a deficiency identified by plaintiff in his opposition memorandum. See Pl.'s Mem. Opp'n at 26. While a district court enjoys the same broad discretion discussed above to also consider such new evidence, even when submitted for the first time in reply papers, out of an abundance of caution this reply declaration will not be considered. Therefore, any possibility of prejudice flowing from this additional material is eliminated. See Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013).

### B. **Propriety of Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.§ 1404(a). "The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing." Wilson v. DirectBuy, Inc., 821 F. Supp. 2d 510, 513 (D. Conn. 2011) (citations omitted). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and

fairness are considered on a case-by-case basis." Rindfleisch v. Gentiva Health Sys., Inc., 752 F. Supp. 2d 246, 250 (E.D.N.Y. 2010) (citation omitted).

Here, the parties agree that this action could have been brought in the District of Arizona. Defs.' Reply Mem at 19; Pl.'s Opp'n at 24. Therefore, the only question is "whether transfer would promote the interests of justice and the convenience of the parties." Rindfleisch, 752 F. Supp. 2d at 250. This requires consideration of: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the proposed forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice, based on a totality of the circumstances. Wilson, 821 F. Supp. 2d at 516.

**1. Plaintiff's Choice of Forum**

Generally, a plaintiff's choice of forum is given "substantial weight." Wilson, 821 F. Supp. 2d at 516. However, although the Second Circuit "has not definitively answered what effect a plaintiff's representative capacity has on his or her choice of forum," it has acknowledged that "district courts may give less weight to this factor in national class actions." Id. (internal citation and citations omitted). Under a similar rationale, the weight given to this factor may be diminished if the operative facts have "little or no connection" to the forum chosen by the plaintiff. Rindfleisch, 752 F. Supp. 2d at 251.

Here, defendants argue Horanzy's choice of forum is entitled to little weight because the operative facts concern misrepresentations made by Vemma in connection with its nationwide sales campaign and, since those representations originate from its headquarters

in Arizona, they bear "little or no connection" to this forum.  Plaintiff responds that the complaint includes detailed allegations about his in-person purchase of products in New York from "Vemma Members" who, he alleges, are actually Vemma employees.  Defendants argue that the mere fact a few sales were made in New York does not control this analysis, especially since the entire product line is manufactured and tested outside New York and distributed globally from Arizona.

Defendants are correct that, at least in the patent infringement context, several courts have held that "[w]here a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer."  Invivo Res., Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 439-40 (S.D.N.Y. 2000) (conducting a § 1404(a) analysis in a patent infringement claim).  And, as they also point out, Horanzy ultimately seeks to represent a class of "all persons in the United States who purchased one or more of the [p]roducts."  Compl. ¶ 123.

Therefore, although Horanzy is arguably a suitable representative for the subclass of plaintiffs who made purchases in New York, the overarching "operative facts" here—the sufficiency of the health claims made by Vemma and allegedly regurgitated by its member-distributor-employees across the country—bear relatively little direct connection to this forum.  Even assuming plaintiff's claim that Vemma Members should actually be considered employees is true, it would only mean that Vemma employees are located in the entire country, including New York.  In sum, plaintiff's claims about a few specific New York sales does nothing to address sales made to potential class members in the other forty-nine states that would likely be swept up as part of this class.  This reality, combined with the

nationwide character of the putative class action here, entitles plaintiff's choice of forum to only minimal weight.

### 2. Convenience of Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." ESPN, Inc. v. Quicksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (citation omitted). However, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." Id. (citation omitted). Typically, a party seeking consideration of this factor must identify key witnesses and the nature of their likely testimony through affidavits. Wilson, 821 F. Supp. 2d at 517. The "materiality, nature, and quality" of these witnesses can then be considered. Id.

Here, defendants argue that all of its officers and employees, including its product development and marketing divisions, are located in Arizona. Plaintiff responds that members of the distribution "upline" originating in New York—the chain of individuals originating with his in-person purchase from a Vemma Member in New York and ultimately reaching back to Vemma as part of its multi-level sales structure—are crucially relevant witnesses to his claims here.

As Horanzy correctly points out, defendants offered little detail about particular witnesses and the substance of their respective testimony in their initial moving papers. Rather, defendants simply stated that: (1) "[a]ll but four of Vemma's employees work in Arizona" (2) "Vemma's corporate officers are located in Arizona"; and (3) "Boreyko and Wang reside and work in Arizona." Tengan Decl. ¶ 11.

However, Horanzy's argument about the relevance of this distribution "upline" located in New York, even if generally credited, is similarly deficient. Neither plaintiff's complaint nor his declaration identify the name or expected testimony of his New York "sponsor," the Vemma "distributor" he purchased products from in New York, or the name of any other member of this "upline" located in New York.

Of course, the complaint—a putative class action—seeks to hold defendants broadly liable for representations made in connection with a nationwide marketing campaign, not solely on the basis of a few small sales to Horanzy. Therefore, it is logical to assume that Vemma's corporate officers, all of whom are located in Arizona, will offer some degree of relevant testimony on Vemma's marketing, sales, and distribution network. Tengan Decl. ¶ 11. But since the generalized hand-waving by both parties about the importance of certain witnesses is insufficient to properly evaluate the "materiality, nature, and quality" of their respective testimony, this factor weighs only marginally in favor of transfer.

### 3. Location of Documents

This factor is not "particularly significant given the technological age in which we live, where there is widespread use of, among other things, electronic document production." Rindfleisch, 752 F. Supp. 2d at 258.

Here, Vemma's records related to the manufacturing and testing of its products, as well as records related to the clinical studies of its products, are all located in Arizona. Tengan Decl. ¶ 13. Defendants argue that the records regarding the sufficiency of the clinical studies are stored in hard copy form in Arizona and will be difficult to convert to electronic format because of their size and shape. Horanzy responds that most of the relevant documents, such as the claims made on Vemma's website, are readily available

online—the documents referenced in the complaint are "almost exclusively" drawn from the internet.

Even though many of the documents may be available electronically, Horanzy's allegations about false health claims tips this factor in favor of transfer, even if only slightly, because these claims and advertisements do "originate" from Vemma's headquarters in Arizona. Cf. Earley v. BJ's Wholesale Club, Inc., 2007 WL 1624757, at *3 (S.D.N.Y. June 4, 2007) ("While a nationwide class action invariably involves voluminous document discovery in numerous locales, the single most likely source of relevant documents is Defendant's headquarters in Massachusetts, because that is where Defendant's corporate policies are determined. This fact weighs in favor of transfer to the District of Massachusetts, albeit marginally."). Accordingly, this factor slightly favors transfer.

### 4. Convenience of Parties

"Where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." Rindfleisch, 752 F. Supp. 2d at 258. However, "transfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience." Id.

Here, transfer to the District of Arizona would completely eliminate inconvenience to defendants. Defendants concede that this would shift the burden to Horanzy, but they also note that since he seeks to represent a nationwide class, any class members located in the other forty-nine states would have to bear the inconvenience of traveling to New York. Plaintiff responds, in essence, that Vemma is better able to bear the inconvenience and expense of traveling to this forum because it is a large corporation and that, since

Vemma has direct control over "all of its employees," its Arizona employees would be willing witnesses in New York.

Of course, extending the logic of Horanzy's argument (given that plaintiff claims all of Vemma's member-distributors are actually "employees") would only mean that there would be willing member-distributor witnesses in all fifty states regardless of the forum selected. But drawing such a conclusion is unnecessary at this stage. "Because the inconvenience to the named and member plaintiffs as a group would be substantially the same regardless of venue, and the inconvenience to defendants as a group would be greatly diminished by transfer," this factor weighs slightly in favor of transfer. Wilson, 821 F. Supp. 2d at 518.

### 5. Locus of Operative Facts

"The locus of operative facts is an important factor to be considered in deciding where a case should be tried." Wilson, 821 F. Supp. 2d at 518. In making this determination, courts look to where "the events from which the claim arises" occurred. Id.

Here, defendants argue that Vemma's marketing strategies and health claims are developed in Arizona. Horanzy responds by focusing on the complaint's allegations that "Vemma Members" are actually Vemma "employees," and that therefore defendant actually has thousands of "employees" located in New York. In particular, Horanzy claims that the "upline" distributors involved in the sales chain between Vemma and Horanzy's eventual in-person purchases are relevant here.

Again, this seems to turn on whether the complaint is characterized as "Horanzy versus the corporate defendants" or "Horanzy and a potential nationwide class of plaintiffs against the corporate defendants." Plaintiff's complaint alleges that defendants promulgated marketing and advertising materials as part of a nationwide scheme to defraud customers.

Plaintiff's complaint also alleges that defendants distributed instructional materials to member-distributors based on these same false claims that were used to re-sell the product nationwide. Based on these claims, the locus of many operative facts would be defendants' headquarters in Arizona, with the remaining facts spread out in all states where Vemma has member-distributors (allegedly, all fifty of them). Wilson, 821 F. Supp. 2d at 518 (finding locus at headquarters where promotional materials and pricing scheme originated from defendants' headquarters and was disseminated to franchisees in other states). Accordingly, this factor favors transfer.

### 6. Availability of Process

A district court may not issue a subpoena directing a witness to travel more than 100 miles. Pecorino v. Vutec Corp., 934 F. Supp. 2d 422, 442 (E.D.N.Y. 2012). Although Horanzy claims that transfer would place all of the New York "upline" distributors out of the District of Arizona's reach, there is no indication that any of these individuals, or any other non-party witnesses for that matter, would refuse to appear or that deposition or videotaped testimony would be an inadequate substitute. See, e.g., id. ("[N]either party has offered anything more than speculation that their non-party witnesses . . . would be unwilling to travel for trial."); Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 562 (S.D.N.Y. 2000) ("[T]he unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists."). Accordingly, this factor is neutral.

### 7. Relative Means of Parties

"Courts may consider the relative financial hardship to litigants in prosecuting or defending an action in a particular forum." Wilson, 821 F. Supp. 2d at 518. In making this

determination, "courts have also considered whether one or more parties are corporations." Id. Here, Vemma, a corporation, is presumably better able to bear the expenses of litigating than Horanzy, an individual plaintiff. However, New York would be no more ideal a forum for the remainder of the putative nationwide class members than any other. Accordingly, this factor is neutral.

### 8. Familiarity with Governing Law

"Federal courts are presumed to be equally familiar with federal law." Wilson, 821 F. Supp. 2d at 519. Likewise, "federal courts are deemed capable of applying the substantive law of other states." Rindfleisch, 752 F. Supp. 2d at 251. Therefore, although Horanzy brings state claims that may ultimately require the transferee district to interpret New York law, this factor is neutral.

### 9. Trial Efficiency & Interests of Justice

This final factor is "broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." Wilson, 821 F. Supp. 2d at 519.

Here, there is no indication that the District of Arizona would be unable to resolve this case in a timely manner. Further, it is worth noting that New York's connection to this case is relatively tenuous. Indeed, it is based on only Horanzy's residence combined with the alleged relevance of unidentified "upline" distributors in vindicating the sweeping claims about defendants' sales and marketing structure. All of defendants' other witnesses, as well as the majority of the relevant evidence regarding the health claims, would seem to be located in Arizona. And, as noted above, neither party has indicated that any non-party

witnesses would be unwilling to attend trial regardless of the forum selected. Accordingly, the interests of justice favor transfer.

## IV. CONCLUSION

New York would make perfect sense as a forum if Horanzy sought only to vindicate personal claims related to the in-person purchase of Vemma's products in New York. But while he does seek to ultimately represent a subclass of those who made purchases in this state, the class action complaint focuses on Vemma's fraudulent activity allegedly occurring nationwide. Indeed, only the first factor in the transfer analysis—plaintiff's choice of forum—truly weighs in his favor, while the remaining factors either favor transfer or are neutral between the parties. On balance, and after considering all of the relevant factors, defendants have met their burden of showing transfer is warranted.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is DENIED without prejudice;

2. Defendants' motion to transfer venue to the District of Arizona is GRANTED; and

3. The Clerk of the Court is directed to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a) and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: February 17, 2015.
      Utica, New York.